**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: January 12, 2024
Date Decided: May 28, 2024

Thaddeus J. Weaver, Esq.
DILWORTH PAXSON LLP
704 N. King Street, Suite 500
P.O. Box 1031
Wilmington, Delaware 19899

Robert L. Burns, Esq.
Kyle H. Lachmund, Esq.
Craig K. Ferrere, Esq.
Naseeba Saeed, Esq.
RICHARDS LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801

Re: *BV Advisory Partners, LLC v. Quantum Computing Inc.*,
C.A. No. 2023-0768-SG

Dear Counsel:

Before me currently is the third in a series of actions related to the June 2022 acquisition of QPhoton, Inc. by Quantum Computing Inc. ("Quantum" or "Respondent"). The first of these is a complaint involving ten causes of actions, including *inter alia* claims for breach of fiduciary duty and breaches of contracts, brought by BV Advisory Partners, LLC ("BV Advisory") in August 2022 against Quantum and QPhoton, Inc., as well as several individual defendants (the "Plenary Action").[1] The second action is a petition for appraisal of stock brought by BV Advisory in October 2022 (the "Appraisal Action").[2] The last bench on the trireme

[1] *See BV Advisory P'rs, LLC v. Quantum Computing Inc.*, C.A. No. 2022-0719-SG.
[2] *See BV Advisory P'rs, LLC v. QPhoton, LLC*, C.A. No. 2022-0923-SG.

is occupied by a petition filed by BV Advisory and Keith Barksdale (the "Petitioners") against Respondent seeking to appoint a receiver under 8 *Del. C.* § 291 (the "Petition").[3] For readers interested in the events that surround the 2022 acquisition of QPhoton, Inc. (the "Merger"), my Memorandum Opinion in the Plenary Action provides a full background.[4]

Petitioners assert that Respondent is insolvent under the balance sheet test and the cash flow test for solvency, and therefore requires the appointment of a receiver under Section 291.[5] Besides directing the Court to line items in Quantum's financials that purportedly demonstrate that Quantum is insolvent, Petitioners rely heavily on the fact that Quantum's auditor included a going concern warning in Quantum's 10-K issued in March 2023.[6] In the alternative, Petitioners assert that the appointment of a receiver should be granted under this Court's equity jurisdiction because a "special circumstance" exists, namely that Petitioners have argued that Quantum is grossly mismanaged in such a way that puts a former QPhoton asset, the "Licensed Stevens IP," at risk of being over-collateralized.[7] Respondent, for its part, has moved to dismiss the Petition for failure to adequately plead elements necessary

---

[3] *See* Verified Pet. to Appoint a Receiver, Dkt. No. 1 (the "Petition").
[4] *See BV Advisory P'rs, LLC v. Quantum Computing Inc.*, C.A. No. 2022-0719-SG (Del. Ch. May 28, 2024) (Mem. Op.).
[5] Pet. ¶¶ 80–85.
[6] Pet'rs' Answering Br. Opp'n Resp.'s Mot. Dismiss 18–24, Dkt. No. 28.
[7] *Id.* at 24–27; Pet. ¶¶ 86–91.

to establish the need for an appointed receiver under Section 291.[8]  Respondent also asserts that there exist no special circumstance requiring the equitable appointment of such receiver.[9]

While Petitioners assert to be creditors and Quantum stockholders, neither assertion has been demonstrated.  Petitioners have not provided evidence of their stock ownership to establish their status as stockholders.[10]  While Petitioners were offered stock in Quantum in connection with the Merger, in exchange for their equity in QPhoton, Petitioners have dissented from the Merger and are seeking fair value via appraisal, instead.  With respect to their status as creditors of Quantum via a note purchase agreement,[11] that status is subject to a contract interpretation dispute at issue in the Plenary Action.

There is another bar to the relief sought here.  Even if I were to assume that Petitioners could clear the procedural hurdle of standing, Petitioners have failed to demonstrate that their position is at risk absent the appointment of a receiver.  The Petition relies entirely on Quantum's financials filed in March 2023 to allege that Quantum was in a "death spiral with little to no ability to recover without drastically changing its current course."[12]  Yet Petitioners have not provided any current

---

[8] Resp.'s Opening Br. Supp. Mot. Dismiss 15–26, Dkt. No. 25 ("Resp.'s OB").
[9] *Id.* at 26–27.
[10] Pet. ¶¶ 6–7, 22.
[11] *Id.* ¶¶ 20–21.
[12] *Id.* ¶ 88; Pet., Ex. E.

information regarding Quantum's financial status to the Court, let alone an update indicating that Quantum is, in fact, presently insolvent or that Petitioners' status as a creditor is at risk.[13]

The Petition further fails to adequately plead a special circumstance that would invoke equity to appoint a receiver. Even if I were to assume that Petitioners succeed in the Plenary Action and establish their status as inchoate creditors, Petitioners have failed to demonstrate that their position is at risk absent a receiver. The imposition of a receiver is an extraordinary remedy; it is not an appropriate vehicle for remedying one's criticisms of corporate governance practices.[14]

I find, accepting the non-conclusory allegations as true, that the Petition insufficiently pleads that Quantum is insolvent and in need of a receiver, especially given Quantum's financial position reported in public filings and Quantum's apparent continued ability to access credit.[15] The Petition is accordingly

---

[13] While Petitioners filed a letter to the Court on February 5, 2024, the contents of that letter do not indicate that Quantum is insolvent. Feb. 5, 2024 Letter to Ct., Dkt. No. 39. In the letter, Petitioners informed the Court that Quantum was not in compliance with NASDAQ's listing rules, but had until May 14, 2024, to become complaint before Quantum would be delisted. May 14, 2024, has come and gone with no further updates from the parties as to whether Quantum has been delisted from NASDAQ. This threat of delisting, alone, does not indicate that Quantum is actually insolvent.

[14] *See, e.g., Pope Invs. LLC v. Benda Pharm., Inc.*, 2010 WL 5233015, at *8–9 (Del. Ch. Dec. 15, 2010) (giving no weight to petitioner's allegations of corporate governance in considering a petition to appoint a receiver).

[15] Quantum has the ability to raise $77 million through a Form S-3 shelf registration with the SEC for $100 million and has an at-the-market financing program with approximately $27 million available. Resp.'s OB 13 (citing QCI, Quarterly Report (Form 10-Q) (Aug. 14, 2023)). *See, e.g., Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 778–80 (Del. Ch. 2004) (finding a petition had sufficiently pled insolvency where (1) the company's liabilities were five

DISMISSED WITHOUT PREJUDICE to request the appointment of a receiver if a change in circumstance so dictates. I note that the resolution of the Plenary Action will bear on the question of standing.

Sincerely,

*/s/ Sam Glasscock III*
Vice Chancellor

---

times its assets; (2) the company had little cash on hand and "its ability to raise cash [was] questionable at best[;]" (3) the company had issued nearly all of its outstanding shares; (4) the company admitted in public filings that it was unable to pay its debts as they became due; and (5) the company's inability to hold an annual stockholder meeting because it could not afford the costs associated with such meeting).